[Civ. No. 6287. First Appellate District, Division One.—November 9, 1928.]

CURTIS W. MAY, Respondent, v. J. W. EMERSON FARRELL et al., Defendants; EDWARDS–MERRITT CO., Appellant.

J. C. Hizar and E. S. Torrance for Appellant.

P. M. Andrews and Allen E. Rogers for Respondent.

CASHIN, J. — An action against defendants J. W. Emerson Farrell and Edwards-Merritt Co., a corporation, to recover damages for personal injuries. After a trial by a jury on the issues presented by the answer of the corporation, defendant Farrell having failed to answer, a verdict was returned against both defendants, and from the judgment entered thereon the coroporation has appealed.

The testimony shows that at 5 o'clock P. M. on March 27, 1925, the plaintiff was injured while riding in an automobile owned and operated by L. E. Ryan. The injuries complained of were brought about by an automobile operated by defendant Farrell, which approached from the rear, striking the Ryan car, and caused the same to overturn.

It was claimed by the plaintiff that at the time of the accident Farrell was employed by appellant and acting

within the scope of his employment. Appellant, which was a dealer in automobiles with its place of business in San Diego, denied the employment, and sought to show that for some time previous to the accident Farrell's only connection with the company had been that of an independent contractor, and that this relation ceased on the morning of the day the accident occurred.

As ground for reversal it is first claimed that the complaint failed to state a cause of action against the corporation in that no facts are pleaded showing that Farrell was acting within the scope of any contract of employment. In this connection it was alleged that Farrell was at all the times mentioned in the complaint an employee and servant of the corporation and acting within the scope of his employment, and, further, that "while he was in the employment of Edwards-Merritt Co., the said corporation, and while he was acting in the scope of said employment, he was operating and driving upon and along the said public highway one Chrysler automobile, and that said J. W. Emerson Farrell while so acting in the scope of his employment so carelessly and negligently drove and operated said Chrysler automobile" as to collide with the automobile in which the plaintiff was riding, causing the injuries and damage complained of.

We think the allegations were sufficient. No cases holding otherwise have been called to our attention except those instances where the acts charged, being ordinarily outside the scope of the servant's employment, were presumptively independent torts; for example, assaults upon third persons (*Letts* v. *Hoboken R. W. & S. C. Co.*, 70 N. J. L. 358 [57 Atl. 392]; *Thomas* v. *McGuinness*, 94 Ill. App. 248; *Davis* v. *Houghtelin* (Neb.), 14 L. R. A. 737, 50 N. W. 765]; *Campbell* v. *Northern Pac. Ry. Co.*, 51 Minn. 488 [53 N. W. 768]; *Smith* v. *Louisville E. & St. L. Ry. Co.*, 124 Ind. 394 [24 N. E. 753]); or, as in *Snyder* v. *Hannibal & St. Joseph R. R. Co.*, 60 Mo. 413, cited by appellant, where children were invited and permitted to jump on and off the cars of a railway company, in which cases it was held that responsibility is not made to appear merely by an allegation that the servant in doing the act was acting within the scope of his authority. As held in *Kuhl* v. *United States Health & Accident Ins. Co.*, 112

Minn. 197 [127 N. W. 628], the terms ''scope of employment'' and ''course of employment,'' like negligence, are now generally regarded as conclusions of fact, and under liberal rules of pleading a complaint containing such allegations is sufficient to justify the admission of evidence in support thereof. As was said in *Haines* v. *Parkersburg M. & I. Ry.*, 71 W. Va. 453 [76 S. E. 843], ''to require a specification of the particular duties with which the servant is charged would impose upon the plaintiff more than is necessary for the accomplishment of the office and purpose of the complaint—a duty to allege matters lying peculiarly within the knowledge of the defendant and often beyond that of the plaintiff.'' And as held in *Goldstein* v. *Healy*, 187 Cal. 206 [201 Pac. 462], less particularity is required where the defendant, from the nature of and his relation to the facts, has full information concerning them. Moreover, in the present case no question as to the sufficiency of the complaint in this or other respects was raised by demurrer or at the trial. Evidence tending to supply any omissions from the complaint was received without objection, and the issue was submitted by the court's instructions to the jury. Under such circumstances an objection to the complaint cannot be urged for the first time on appeal (*Greiss* v. *State Investment & Ins. Co.*, 98 Cal. 241 [33 Pac. 195]; *Treanor* v. *Houghton*, 103 Cal. 53 [36 Pac. 1081]; *Abner Doble Co.* v. *Keystone etc. Co.*, 145 Cal. 490, 495 [78 Pac. 1050]; *Northwestern Mut. Fire Assn.* v. *Pacific Wharf & Storage Co.*, 187 Cal. 38 [200 Pac. 934]; *Stewart* v. *Erskine-Bolst*, 66 Cal. App. 461 [226 Pac. 644]).

It is further contended that the evidence was insufficient to support a finding that the relation of master and servant existed. The evidence shows without conflict that Farrell, who was a salesman, had up to the day of the accident been engaged in selling automobiles for appellant. It was testified by him that at the time of the accident he with Ray Harrison, who had also been appellant's salesman, were returning to San Diego from Pacific Beach, where they had gone for the purpose of visiting prospective customers. He further testified that he was then in the employ of the appellant, receiving for his services as a salesman both a salary and a commission, and denied that

he was discharged therefrom until after the accident. According to its president, Farrell up to the day of the accident had been employed by appellant as a salesman on commission only, and was discharged from his employment on the morning of that day. The testimony of its sales manager was to the same effect, each of these witnesses testifying that Farrell had previously received a salary, which ceased on March 1, 1925, and that after his discharge he was re-employed on April 10th of the same year. It further appears that Farrell with other salesmen was required to report at a fixed hour each morning and attend a daily sales meeting at the office of the company. In this connection the president of appellant, in response to a question on cross-examination as to whether Farrell in the conduct of his work could use his own time, gave the following answer: "No. All of our men have to report every morning to the sales manager just the same as if they are working on salary," and further stated that if they failed to report they would be discharged. According to these statements, in addition to requiring reports and attendance at sales meetings, appellant further sought to control the conduct of its salesmen in other respects, the grounds for the action taken in Farrell's case, according to the testimony, being his failure to report and also his indulgence in intoxicants on occasions immediately preceding his discharge. It was further shown from the record sheet produced by the sales manager that but one commission was earned by Farrell during the month of March, and that this was paid. In addition to this, however, the payment to him of additional sums was shown which, according to the witness, were loans or advances. One of these amounts was paid on April 4, 1925, after the date when it was claimed that Farrell was discharged and before the date of his claimed re-employment. In his work Farrell used for demonstration purposes an automobile which he had purchased and partially paid for under a sales agreement with appellant, the title to the car being retained by the latter.

The above comprises substantially the evidence from which the jury concluded that Farrell was a servant and not an independent contractor. ■ An independent contractor is one who in rendering service exercises an inde-

pendent employment or occupation, and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Moody* v. *Industrial Acc. Com.,* 204 Cal. 668 [60 A. L. R. 299, 269 Pac. 542]); and when the essential object of the employment is the performance of the work the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the work shall be done (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721]). As was held in *Western Mutual Supply Co.* v. *Pillsbury,* 172 Cal. 407 [Ann. Cas. 1917E, 390, 156 Pac. 491], the real test is to ascertain whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct; and the fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it (*Cameron* v. *Pillsbury,* 173 Cal. 83 [159 Pac. 149]; *Sumner* v. *Nevin,* 4 Cal. App. 347 [87 Pac. 1105]). ■ In the present case the contract of employment was oral, and, so far as shown, no express stipulation as to the right of the employer to control the mode and manner of doing the work was made. In the absence of such stipulation the existence or nonexistence of the right must be determined by reasonable inferences to be drawn from the circumstances shown by the evidence (*Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 Pac. 820]); and in that connection certain facts have been held to possess an inferential significance. While the tendency of modern decisions is not to regard the manner of paying for the work done as decisive, this nevertheless is a circumstance bearing upon the question (*Corbin* v. *American Mills,* 27 Conn. 274 [71 Am. Dec. 63]; *Ruehl* v. *Lidgerwood,* 23 N. D. 6 [Ann. Cas. 1914D, 680, L. R. A. 1918C, 1063, 135 N. W. 793]; *Indiana Iron Co.* v. *Cray,* 19 Ind. App. 565 [48 N. E. 803]; *Williams* v. *National Cash Register Co.,* 157 Ky. 836 [164 S. W. 112]; *Buckley* v. *Harkens,* 114 Wash. 468 [195 Pac. 250]; *Dishman* v. *Whitney,* 121 Wash. 157 [29 A. L. R. 460, 209 Pac. 12]; 1 Thompson on Negligence, secs. 579, 626). As said in the note to *Chicago, R. I. & Pac. Ry. Co.* v. *Ben-*

*nett,* 36 Okl. 358 [20 A. L. R. 678, 128 Pac. 705], "It has been laid down that the manner of payment of the contractor, whether it be by the day or in a lump sum, is not a material factor in determining the relation between the parties, and that it does not matter whether the contractor is to be compensated by a lump sum or a commission on the cost or a per diem payment; but it is manifest from the decisions that these sweeping statements need some qualification. The correct doctrine, so far it can be expressed in general phraseology, is this, that the mode of payment is an element which has some bearing upon the question whether the person employed was an independent contractor, but it does not afford a decisive test of the nature of his relationship to the employer." Another circumstance tending to negative the independence of the employee is the right of the employer to terminate the employment at any time (*Press Pub. Co.* v. *Industrial Acc. Com., supra; Brown* v. *Industrial Acc. Com.,* 174 Cal. 457 [163 Pac. 496]). The fact that the salesman furnished his own transportation did not affect his status as an employee (*Press Pub. Co.* v. *Industrial Acc. Com., supra; Eng-Skell* v. *Industrial Acc. Com.,* 44 Cal. App. 210 [186 Pac. 163]); and where the relation is not created by a writing and the evidence is conflicting or consists of circumstances from which different conclusions might reasonably be drawn, the question whether the right to direct the mode and manner of doing the work was reserved by the employer is one for the jury (*Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50]; *Sacchi* v. *Bayside Lumber Co.,* 13 Cal. App. 72 [108 Pac. 885]).

In *Barton* v. *Studebaker Corporation, etc.,* 46 Cal. App. 707 [189 Pac. 1025], it was held that an automobile salesman employed on a commission basis with no salary and no fixed hours, and over whom the company exercised no authoritative control, was an independent contractor for whose negligent acts the company was not liable. In the present case, however, there was testimony—which other evidence tended to corroborate—that at the time of the accident a salary as well as a commission was being paid, and evidence that the hours of the salesman were regulated to the extent which the character of the employment made reasonably possible. It also appears that the employer

with the acquiescence of the salesman claimed and exercised the right of discharge. Where a contract of employment is ambiguous as to whether the party employed was an independent contractor or an employee, resort may be had to the construction put upon it by the conduct of the parties subsequent to its execution (*Porter* v. *Withers Est. Co.*, 201 Mo. App. 27 [210 S. W. 109]); and from all the circumstances shown an inference was not unreasonable that, subject to the freedom of action inherent in the nature of the work, it was understood that the right to direct the manner in which the same should be done was reserved by the employer. The question was properly submitted to the jury (*Buckley* v. *Harkens, supra; Dishman* v. *Whitney, supra; Majors* v. *Connor,* 162 Cal. 131 [121 Pac. 371]), and we cannot say that its conclusion was unsupported.

It is further claimed that the evidence was insufficient to show that Farrell at the time of the accident was performing a service for appellant. According to his testimony he was returning to San Diego after a visit to a prospective customer at Pacific Beach. It is not contended that the trip to the latter place would not have been within the course of his employment as a servant, but that the accident having occurred while returning to San Diego he was not then representing or engaged in the business of his employer.

In order to hold a master liable it is not necessary that his servant should be engaged in the direct performance of the thing which is the ultimate object of the employment, for also included within its scope are those acts which incidentally or indirectly contribute to the service (*Kish* v. *California etc. Auto Assn.,* 190 Cal. 246 [212 Pac. 27]). Where the service is not performed at a fixed place it might properly be held, as was suggested in the above case, that the day's employment commenced at the hour in the morning when the servant reported for duty, and terminated upon his return in the evening; and it is immaterial in determining the question of agency whether he was going upon or returning from an errand undertaken in pursuit of his master's business (*Brimberry* v. *Dudfield Lumber Co.,* 183 Cal. 455 [191 Pac. 894]; *Jedlicka* v. *Shackelford* [Mo. App.], 270 S. W. 125), it being sufficient,

as above stated, that he was engaged in acts contributing to the service; and where the evidence raises the question whether he was so engaged the issue is one for the jury (*Tuttle* v. *Dodge,* 80 N. H. 304 [116 Atl. 627]; *J. R. High Hardware Co.* v. *Garlitz* (Tex. Civ. App.), 265 S. W. 1059; *Dillon* v. *Prudential Ins. Co.,* 75 Cal. App. 266 [242 Pac. 736]).

■ Appellant also contends that certain of the court's instructions were prejudicially erroneous. The court read to the jury that portion of the Vehicle Act which provides that "No person who is under the influence of intoxicating liquor or who is an habitual user of narcotic drugs shall drive a vehicle on any public highway within this state. . . ." It is urged that none of the evidence tended to show that Farrell at the time of the accident was under the influence of liquor or was a user of drugs. This is true as to the use of drugs, but evidence was adduced by appellant by which it sought to show the use of intoxicants during the several days immediately preceding the accident, and Farrell on cross-examination admitted such use on the evening previous to the accident. This, with evidence showing his reckless driving on the latter occasion, tended in some degree to show that his actions were influenced by liquor. These facts were relevant on the question of negligence, and the first portion of the instruction was not improper. While the latter portion was inapplicable it cannot reasonably be said to have confused the jury to the prejudice of appellant (*Dillon* v. *Prudential Ins. Co., supra*).

■ Appellant further complains that the instruction by which the jury was told that in determining the amount of damages they might consider plaintiff's health and condition before the injury as compared with his present condition, assumed as a fact that his health had been impaired by the injuries alleged; and, further, that the instruction was improper in that no evidence was adduced from which the fact might reasonably be found. While such assumption might be implied if the instruction stood alone, the jury was also told not to construe the instructions as indicating the court's view of the facts, as these were for their determination exclusively. Furthermore, there was testimony by both the plaintiff and his wife indicating an im-

pairment of his health since the accident. Whether this condition was caused thereby was a question for the jury, and the instruction was properly given.

The giving of the following instruction is also assigned as error: "You are instructed that worry over inability to pursue a customary avocation is an element of damages which may be taken into consideration." That mental suffering occasioned by plaintiff's apprehension of future disability was caused by the injury was shown by his testimony and that of his wife. In view of such evidence the instruction was proper (*Merrill* v. *Los Angeles Gas & Electric Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534]; *Boa* v. *San Francisco etc. Rys.*, 182 Cal. 93 [187 Pac. 2]; *Ryan* v. *Oakland Gas etc. Co.*, 21 Cal. App. 14, 26 [130 Pac. 693]).

It is further claimed that the amount awarded as damages, viz., $10,000, was excessive, and shows that the verdict was the result of passion or prejudice. The testimony discloses that the plaintiff was thirty-two years of age, that he had a wife and family and was by trade a carpenter, which calling he had followed for some years, his wages at the time of the accident being nine dollars a day. By reason of the accident, in addition to minor injuries, all of the extensor tendons connecting with the thumb and fingers of his left hand, with the exception of the two connecting the small finger, were severed. He was confined to the county hospital for eighteen days, during which time he suffered severe pain, and an operation on his hand and wrist was performed. According to his testimony and that of his wife, his health deteriorated after the accident, and he has since suffered from an affection of the heart, in addition to which, as stated above, the evidence shows that mental suffering was occasioned by his apprehension of future disability. The plaintiff further testified that he was unable to close his hand, owing to the fact that the tendons had become shortened and stiff, it being for that reason impossible for him with safety to work upon roofs or scaffoldings, or to use his hand in nailing or other work necessary in his trade.

A physician, who was in attendance upon plaintiff at the county hospital, testified that the hand had ninety per cent flexion, that the plaintiff had practically full use

of the wrist and seventy to eighty per cent use of the thumb, but that in his opinion the thumb would cause disability as a carpenter, and the hand as a unit would never be as good as before the injury. The last witness was the only physician who testified as to conditions existing at the time of the trial or whose opinion was asked as to the probable outcome of the injury. It is apparent from the record that his testimony was given reluctantly, and the conclusion was not unreasonable that with respect to the plaintiff he was not altogether a friendly witness. The jury was entitled to take the attitude of the witness into consideration (Code Civ. Proc., sec. 1847), and although testifying as an expert, the jury was not concluded thereby (*Spencer* v. *Collins,* 156 Cal. 298, 307 [20 Ann. Cas. 49, 104 Pac. 320]; *Linforth* v. *San Francisco Gas & Electric Co.,* 156 Cal. 58 [19 Ann. Cas. 1230, 103 Pac. 320]; *In re Redfield,* 116 Cal. 637 [48 Pac. 794]; and it was for them to determine the weight to be given his testimony (*Dunphy* v. *Dunphy,* 161 Cal. 380 [Ann. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818, 119 Pac. 512]; *Barnum* v. *Bridges,* 81 Cal. 604 [22 Pac. 924]). It is the rule that the verdict of the jury cannot be set aside on the subject of damages unless so plainly excessive on the face of the record as to warrant the conclusion that it was the result of passion or prejudice (*Perry* v. *Angelus Hospital Assn.,* 172 Cal. 311 [156 Pac. 449]; *Anstead* v. *Pacific Gas & Elec. Co.,* 203 Cal. 634 [265 Pac. 487]). There is no absolute rule for determining whether a verdict is excessive (*Morgan* v. *Southern Pac. Co.,* 95 Cal. 501 [30 Pac. 601], and awards for personal injuries cannot be so held as a matter of law simply because the amount may be larger than is ordinarily allowed in such cases (*James* v. *Oakland Traction Co.,* 10 Cal. App. 785 [103 Pac. 1082]). As was said in *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237, 254 [116 Pac. 513, 520]: "The only means of discovering the existence of passion and prejudice as influencing the verdict is by comparing the amount of the verdict with the evidence before the trial court. To say that a verdict has been influenced by passion and prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence. The question in the first instance is for the trial court, which in the present

case denied a motion for a new trial on the above ground; and in considering an attack upon a verdict as excessive the reviewing court must treat every conflict in the evidence as resolved in favor of the respondent, and give him the benefit of every inference that can be reasonably drawn in support of his claim (*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.*, 156 Cal. 273 [104 Pac. 312])." The injuries in the present case were similar in character and extent to those received by the plaintiff in *Perry* v. *Angelus Hospital Assn., supra,* wherein an award of $11,500 was sustained; and after a review of the evidence before us we cannot say that they were not in view of the circumstances such as to justify the verdict of the jury. Furthermore, no error has been shown which supports the conclusion that the trial resulted in a miscarriage of justice.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 8, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1929.

All the Justices concurred.