[Civ. No. 14678.   Second Dist., Div. Two.   Feb. 19, 1945.]

AGNES GRAETCH et al., Respondents, v. PETER DIX et al., Defendants; J. W. HENDERSON, Appellant.

George R. Larwill, George S. Dennison and Thomas A. Wood for Appellant.

Parker, Stanbury & Reese, Harry D. Parker and Edward J. Guirado for Respondents.

WOOD (W. J.), J.—Plaintiffs commenced this action to recover for personal injuries which they suffered on June 4, 1943, when the automobile in which they were riding was struck by an automobile driven by defendant Dix. They allege that Dix was at the time of the accident the agent of defendant Henderson, doing business as Henderson Livestock Commission Company, acting within the course of his employment. A jury returned a verdict in favor of plaintiffs in the sum of $7,500. In this appeal, which is prosecuted by Henderson Livestock Commission Company only, it is asserted that the evidence is insufficient to sustain the implied finding of the jury that Dix was the agent of his codefendant, and that it is affirmatively shown that the status of Dix was that of independent contractor.

The evidence upon which the jury based its verdict is to be found mainly in the testimony of Dix, which is not in substantial conflict with any other evidence. Dix commenced his employment with Henderson Livestock Commission Company, hereinafter referred to as Henderson, on March 15, 1943. Henderson maintained offices in the Union Stock Yards and charged a commission from owners for selling their livestock. Dix was "hired" by Henderson, receiving 75 per cent of the commission from the sale of stock which he delivered. Henderson guaranteed to Dix compensation of $250 per month, but Dix did not earn a sufficient sum as commission to cover his guarantee until several months after the accident in question. Dix furnished his own car but was allowed five cents per mile while using it. He worked out of Henderson's office and used a business card on which was printed:

"Res. Phone, Covina 14605
Henderson Livestock Commission Company
Union Stock Yards.
Los Angeles, California.            Office:
Peter Dix.                          Phone: Jefferson 6690"

Henderson deducted from the earnings of Dix certain sums for Social Security and Unemployment Insurance. Dix testified: "Q. Whatever Mr. Henderson tells you to do you do it?

A. Well, he doesn't have to tell me what to do, *but he can tell me what to do.* Q. Who hired you? A. He hired me. If I was working on a straight commission, that would be one thing, but it is up to me to work my own business up. He can tell me to do certain things at times, but he doesn't really do it. In other words, I am left to my own." Dix also stated that he could "trade" in livestock if he saw "something to make a piece of money" and in that case he traded through the Henderson Livestock Commission Company and got his percentage out of the profits of the purchase and sale of the stock. He did not make any formal report to Henderson but he kept Henderson informed as to his activities. When asked if Henderson directed him to call on any particular persons to solicit business he replied that Henderson "left that entirely up to me as I saw fit." Dix received his pay from Henderson every two weeks. Mr. Henderson testified that Dix had a "hog and sheep concession" with his company. He stated that he had gone into business for himself when he hired Dix and that it was necessary for him to have a salesman. He testified: "A. And if he did not sell any sheep or hogs and that went on for two or three months you would terminate your connection with him, wouldn't you? A. No, I would keep him as a necessary evil."

It is ordinarily the function of the jury to determine the issue whether a commission salesman is an employee or an independent contractor. If only one reasonable inference can be drawn from the evidence the question becomes one of law for the court but in most cases it is a mixed question of law and fact and the jury's determination of the question is binding upon the reviewing court if it is supported by substantial evidence. (*Lee* v. *Nanny,* 38 Cal.App.2d 90 [100 P.2d 832].) In resolving the issue whether one is in fact an employee it is very important to apply the test whether the alleged employer has the right to control his activities, the right to direct and give orders, whether that right be exercised or not. It is also important to take into consideration whether the alleged employer has the right to discharge. (*Curcic* v. *Nelson Display Co.,* 19 Cal.App.2d 46 [64 P.2d 1153].) The fact that a certain amount of freedom of action is inherent in the nature of the work does not require that one be characterized as an independent contractor. (*George* v. *Chaplin,* 99 Cal.App. 709 [279 P. 485].) In the absence of an agreement on the subject of the

right to control the mode and manner of doing the work the jury may determine the existence or nonexistence of the right to control by drawing a reasonable inference from the circumstances shown in evidence. (*George* v. *Chaplin, supra.*)

That Henderson had the right to discharge Dix, who in turn had the right to quit at any time, is apparent from the evidence. It is clear that the jury could reasonably draw the inference that Henderson had the right to control the activities of Dix not only from the facts and circumstances above related but from the direct testimony of Dix, who referred to Henderson as his "boss" and stated: "Well, he didn't have to tell me what to do, but he can tell me what to do."

In support of his claim that Dix was shown to be an independent contractor as a matter of law appellant refers to that part of the testimony of Dix in which he stated that he had a similar contract with another commission house. Dix testified: "Q. Were you engaged in any business or occupation at the same time that you were also selling stock? A. Not while I was selling stock for Mr. Henderson. Q. On any of the cattle or stock that was consigned to you, did you sell those through any other commission house or firm? A. I had that arrangement with one other commission firm, whereby I sold hogs for them and sheep for them also." Dix did not make his testimony clear on the point of his agreement with the other commission house but he testified: "Q. The Henderson Livestock Commission Company gets a certain commission and you get part of that; is that the situation? A. That is right. Q. *If you had made this particular deal,* then the Henderson Livestock Commission Company would have gotten a commission and that would have also resulted in a partial commission to you; is that right? A. Right." If Dix had been on a mission for some other commission house at the time of the accident appellant unquestionably would not be liable for plaintiffs' injuries but we are satisfied that the jury was justified in finding that at the time of the accident Dix was on a mission for Henderson and was working within the scope of his employment with Henderson.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1945.