[S. F. No. 12781. In Bank.—August 4, 1928.]

FRED S. MOODY, Petitioner, v. INDUSTRIAL AC-
CIDENT COMMISSION and IDA M. DRACKET, Re-
spondents.

Lloyd Baldwin and R. P. Wisecarver for Petitioner.

G. C. Faulkner for Respondents.

WASTE, C. J.—*Certiorari* to review an award of the Industrial Accident Commission in favor of Ida M. Dracket and against Fred S. Moody. Briefly, the facts are that petitioner, Fred S. Moody, while suffering from an infection, which caused a high fever and delirium, was ordered sent to the hospital by his physician, who requested the hospital to assign petitioner a room, to prepare the operating room, and to call in a special nurse. In response to the doctor's request, the respondent Ida M. Dracket, a professional nurse, was summoned by the hospital management to take charge of the case, her name being taken from a waiting-list of nurses kept by the hospital. There was no agreement or understanding as to the nature of her duties or the right to control her services. Her hours of employment and the wages she was to receive were covered by an operating schedule maintained between the hospital and the nurses' association. The operation was performed, and petitioner's delirium continued for a period of a week or ten days thereafter. After attending the patient for a week, the respondent complained of a soreness in her thumb, and was immediately retired from the case. The soreness developed into an infection, and she remained at the hospital as a patient for over two months. She filed a claim with the Industrial Accident Commission for compensation for injuries arising out of and in the course of her employment by petitioner, and was granted an award for a temporary total disability from November 8, 1926, and continuing indefinitely. Petitioner seeks to have the award annulled, contending that the relationship of master and servant does not exist in this case; that the disputable presumption of employment based on personal service, embodied in section 8 (b) of the Workmen's Compensation Act, has no application to the facts here, and that the status of the respondent nurse at the time she became inoculated with the infection was not that of an employee, but that of an independent contractor, exercising an independent calling, and retaining the entire control over the method and manner of doing her work, in accordance with her learning, skill, and training.

The sole question to be considered, therefore, in this proceeding is whether a graduate nurse, attending a patient in her professional capacity, becomes an "employee" of the patient, within the meaning of the Workmen's Compensation Act, or is to be considered an "independent contractor." The Commission contends that, having found that the respondent was performing service for petitioner at the time she became infected, it was presumed that her status was that of an employee; that, under section 19 (d) of the Workmen's Compensation Act, the burden of showing that she was an independent contractor was upon petitioner, and that that burden of proof was never discharged, and, therefore, the presumption was never overcome.

Section 8 (b) of the Compensation Act, above referred to, provides that "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumd to be an employee within the meaning of this act." Many definitions of an "independent contractor" have been made, but they are not essentially different. (*Franklin Coal Co.* v. *Industrial Com.*, 296 Ill. 329, 334 [129 N. E. 811].) The following definition may be regarded as a correct statement of what constitutes an independent contractor: One who renders service in the course of an independent employment or occupation, following his employer's desires only in the results of the work, and not the means whereby it is to be accomplished. (*Brown* v. *Industrial Acc. Com.*, 174 Cal. 457, 460 [163 Pac. 664]; *Green* v. *Soule*, 145 Cal. 96, 99 [78 Pac. 337]; *Barton* v. *Studebaker Corp.*, 45 Cal. App. 707 [189 Pac. 1025]; *North Bend Lumber Co.* v. *Chicago etc. R. Co.*, 76 Wash. 232, 242 [135 Pac. 1017].) "It is well settled that where one person is performing work in which another is beneficially interested, the latter may exercise over the former a certain measure of control for a definite and restricted purpose without incurring the responsibilities, or acquiring the immunities, of a master, with respect to the person controlled." (*Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807, 811 [159 Pac. 721].) The decisive test of the relationship is: Who has the right to direct what shall be done, and when and how it shall be done? Who has the right to general control? (*Lassen* v. *Stamford Transit*

*Co.*, 102 Conn. 76 [128 Atl. 117, 118]; see, also, *Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 191 Cal. 404, 407 [43 A. L. R. 1304, 216 Pac. 578].) In other words, the test of what constitutes independent service lies in the control exercised. The test of control means complete control, and we must carefully distinguish between authoritative control and mere suggestion as to detail. (*Western Indemnity Co.* v. *Pillsbury, supra.*)

We have found but one or two cases in the reports of the various states involving the status of a graduate nurse. "Ordinarily a trained nurse, performing her usual duties with the skill which is the result of training in that profession, does not come within the definition of a servant, but rather is one who renders personal services to an employer in pursuit of an independent calling." (*Parkes* v. *Seasongood*, 152 Fed 583.) The professions of doctor and nurse are so closely allied that decisions applicable to one would appear to apply equally well to the other. In the great majority of instances the inference, that it is the implied intention of the parties to contracts for the services of a medical practitioner that he is not to be under the employer's control with respect to the details of his work, is corroborated by the consideration that the employer is a person who does not possess the technical skill which would qualify him to exercise such control, and that it would, for that reason, be highly inexpedient for him to attempt to exercise it. (19 A. L. R. 1186.) "There is no more distinct calling than that of the doctor, and none in which the employee is more distinctly free from the control or discretion of his employer." (*Pearl* v. *West End Street R. Co.*, 176 Mass. 177 [79 Am. St. Rep. 302, 49 L. R. A. 830, 57 N. E. 339].) It is obvious that the judgment of the doctor, or nurse, must frequently be contrary to the wishes of the patient, and, in the exercise of their independent calling, it is their undisputed right to follow their own judgment without interference on the part of the patient. As was said in *Quinn* v. *Kansas City etc. R. Co.*, 94 Tenn. 713 [45 Am. St. Rep. 767, 28 L. R. A. 552, 30 S. W. 1036]: "It was necessary that these surgeons should bring to their work not only their best skill, but the right to exercise it in accordance with their soundest judgment and without interference. Not

only was this the right of these surgeons, but it was as well a duty that the law imposes. If the railroad authorities had undertaken to direct them as to the method of treatment of the injured man, and this method was regarded by them as unwise, they would have been 'bound to exercise their own superior skill and better judgment, and to disobey their employers, if in their opinion the welfare of the patient required it.' (*Railway Co.* v. *Artist,* 9 C. C. A. 14, 60 Fed. 365 [23 L. R. A. 581].)''

It is admitted here that the respondent nurse would have refused to obey orders given her by the petitioner with reference to the methods of treating him even had his condition permitted him to give such directions. She would take orders from the patient with respect to minor services looking to his comfort, but that measure of control falls far short of that complete and authoritative control which is the decisive test of the relationship of master and servant. In accordance with that test it would appear that the right to control and direct the work of the respondent nurse was not reserved to the petitioner, and that she must be deemed to be an independent contractor within the meaning of the Workmen's Compensation Act.

The respondent contends that to hold contrary to its findings in this instance would be, in effect, to read into section 8 (a) of the Workmen's Compensation Act an exclusion of professional workmen, when such was not the intention of the legislature. We cannot agree with this contention. The mere fact that the employee is one who carries on a separate and independent employment does not make him an independent contractor, although it is a circumstance to be taken into consideration as tending to show that he is an independent contractor. (39 C. J. 1319.) When, in addition to this circumstance, there is lacking, as in the present instance, the essential element that the master or employer shall have control and direction, not only of the employment to which the contract relates, but of all its details (*Pilger* v. *City of Paris Dry Goods Co.,* 86 Cal. App. 277 [261 Pac. 328]), the relation of master and servant, or employer and employee, cannot exist, and the person performing the service must be deemed to be an independent contractor. Under the facts of this case, therefore, it follows

that the respondent Commission had no jurisdiction to make the award.

The award is annulled.

Curtis, J., Shenk, J., Preston, J., Seawell, J., Richards, J., and Langdon, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.